Filed 5/5/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| NIKKI POOSHS, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S172023 |
| v. | ) | |
| | ) | 9th Cir. No. 08-16338 |
| PHILIP MORRIS USA, INC., et al., | ) | |
| | ) | N.D. Cal. No. |
| Defendants and Respondents. | ) | 3:04-cv-01221-PJH |
| _____ | ) | |

Plaintiff was a cigarette smoker for 35 years, from 1953 through 1987. In 1989, she was diagnosed with chronic obstructive pulmonary disease (COPD), which plaintiff knew was caused by her smoking habit. Nevertheless, she did not sue the manufacturers of the cigarettes that she had smoked, and the statutory period for doing so elapsed.

In 1990 or 1991, plaintiff was diagnosed with periodontal disease, which she knew was caused by her smoking habit. Again, she did not sue the various cigarette manufacturers, and the statutory period for doing so elapsed.

In 2003, plaintiff was diagnosed with lung cancer. This time, she sued. We must decide whether the lawsuit is barred by the statute of limitations, which requires that a suit be brought within a specified period of time after the cause of action accrues.

The matter comes to us from the United States Court of Appeals for the Ninth Circuit. (See Cal. Rules of Court, rule 8.548.) The Ninth Circuit has asked us to answer two questions: "(1) Under California law, when may two separate

1

physical injuries arising out of the same wrongdoing be conceived of as invading two different primary rights? [¶] (2) Under California law, may two separate physical injuries — both caused by a plaintiff's use of tobacco — be considered 'qualitatively different' for the purposes of determining when the applicable statute of limitations begins to run?" (*Pooshs v. Phillip Morris USA, Inc.* (9th Cir. 2009) 561 F.3d 964, 966-967 (*Pooshs*).) In granting the Ninth Circuit's request, we restated the two questions in a single question: "When multiple distinct personal injuries allegedly arise from smoking tobacco, does the earliest injury trigger the statute of limitations for all claims, including those based on the later injury?"

We hold that two physical injuries — both caused by the same tobacco use over the same period of time — can, in some circumstances, be considered "qualitatively different" for purposes of determining when the applicable statute of limitations period begins to run. (*Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 645 (*Grisham*).) Specifically, when a later-discovered disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based on the later disease. This holding is consistent with the conclusions reached by courts in other jurisdictions addressing the same issue, often in the context of asbestos-related litigation.[1] We

---

[1] The leading case is *Wilson v. Johns-Manville Sales Corp.* (D.C. Cir. 1982) 684 F.2d 111, 112 (*Wilson*), in which a federal Court of Appeals concluded "that time to commence litigation does not begin to run on a separate and distinct disease until that disease becomes manifest." Cases from jurisdictions throughout the United States have followed *Wilson*. (See, e.g., *Nicolo v. Philip Morris, Inc.* (1st Cir. 2000) 201 F.3d 29; *Jackson v. Johns-Manville Sales Corp.* (5th Cir. 1984) 727 F.2d 506; *Goodman v. Mead Johnson & Co.* (3d Cir. 1976) 534 F.2d 566; *Agles v. Merck & Co., Inc.* (D.Hawaii 1995) 875 F.Supp. 701; *Anderson v. W.R. Grace & Co.* (D.Mass. 1986) 628 F.Supp. 1219; *Fearson v. Johns-Manville Sales Corp.* (D.D.C. 1981) 525 F.Supp. 671; *Sheppard v. A.C. & S. Co.* (Del.Super.Ct.

*(footnote continued on next page)*

2

limit our holding to latent disease cases, without deciding whether the same rule should apply in other contexts.

In addressing the issue presented here, we emphasize that our role is only to answer the "question of California law" that the Ninth Circuit posed to us. (Cal. Rules of Court, rule 8.548(a).) We play no role in assessing the merits of plaintiff's factual assertions, which must be determined in the federal court. Specifically, plaintiff asserted in the federal district court that her lung cancer is a disease that is separate and distinct from her other two smoking-related diseases. Although this assertion appears plausible on its face, its resolution requires medical expertise. Here, the factual record was never developed because the federal court considered plaintiff's separate-disease assertion to be irrelevant for purposes of applying the statute of limitations, and it granted summary judgment for defendants. On plaintiff's appeal to the Ninth Circuit, that court then asked us whether plaintiff's assertion that her diseases are separate and distinct has any relevance under California statute of limitations law. The Ninth Circuit's reference order states: "For the purposes of summary judgment . . . [i]t is uncontested that the etiology for lung cancer is distinct from the etiology for

*(footnote continued from previous page)*

1985) 498 A.2d 1126, affd. in *Keene Corp. v. Sheppard* (Del. 1986) 503 A.2d 192; *VaSalle v. Celotex Corp.* (Ill.App.Ct. 1987) 515 N.E.2d 684; *Pierce v. Johns-Manville Sales Corp.* (Md. 1983) 464 A.2d 1020; *Board of Trustees v. Mitchell* (Md.Ct.Spec.App. 2002) 800 A.2d 803; *Larson v. Johns-Manville Sales Corp.* (Mich. 1986) 399 N.W.2d 1; *Sweeney v. General Printing Inc.* (N.Y.App.Div. 1994) 621 N.Y.S.2d 132; *Marinari v. Asbestos Corp., Ltd.* (Pa.Super.Ct. 1992) 612 A.2d 1021; *Shadle v. Pearce* (Pa.Super.Ct. 1981) 430 A.2d 683; *Potts v. Celotex Corp.* (Tenn. 1990) 796 S.W.2d 678; *Pustejovsky v. Rapid-American Corp.* (Tex. 2000) 35 S.W.3d 643; *Niven v. E.J. Bartells Co.* (Wn.Ct.App. 1999) 983 P.2d 1193; see also cases cited in *Grisham*, *supra*, 40 Cal.4th at p. 643, fn. 12.)

COPD and periodontal disease."[2] (*Pooshs*, *supra*, 561 F.3d at p. 967.) Therefore, in addressing the issue before us, we assume plaintiff's assertion to be true, and we focus solely on its legal implications.

## I

Plaintiff Nikki Pooshs filed this action in San Francisco Superior Court in January 2004, less than a year after she was diagnosed with lung cancer. The complaint named various corporate defendants, many of them cigarette manufacturers. Plaintiff alleged that she smoked cigarettes from 1953 until the end of 1987, that she was ignorant of many of the dangers associated with cigarette smoking, and that defendants misled her about those dangers, concealed from her the addictive properties of tobacco, and took other steps to induce her to smoke. She asserted 13 theories of recovery, including allegations of negligence, products liability, misrepresentation, fraud, conspiracy, failure to warn, unfair competition, and false advertising.

Defendants removed the case to federal court and then filed several motions to dismiss. After several dismissals, only four cigarette manufacturers and their public relations agent remained as defendants. These remaining defendants sought dismissal of the complaint, citing the Ninth Circuit's decision in *Soliman v. Philip Morris Inc.* (9th Cir. 2002) 311 F.3d 966 (*Soliman*). In that case, a California plaintiff alleged that he had smoked cigarettes since the late 1960's and could not quit. (*Id.* at p. 969.) He claimed nicotine addiction as one of his injuries, in addition to several respiratory and emotional disorders. (*Id.* at pp. 969-970, 972.)

---

[2]     At oral argument before this court, defendants clarified that this factual point is "uncontested" *only for purposes of the summary judgment issue*. Defendants contend that even if plaintiff's diseases are separate and distinct, the point is irrelevant to the application of the statute of limitations bar, and the validity of that contention is the legal issue before us.

4

He further claimed that he did not learn that smoking was addictive (and that he was addicted) until late 1999. In March 2000, he sued various tobacco companies in state court. (*Id.* at p. 970.) The *Soliman* defendants removed the case to federal court and then moved to dismiss the complaint on statute of limitations grounds. The defendants doubted that the plaintiff, who had smoked for 32 years, could have discovered his health problems only months before bringing suit. They argued that he had constructive knowledge much earlier, and therefore his suit was time-barred. The district court, applying California law, dismissed the complaint because of expiration of the statute of limitations period. The plaintiff appealed to the Ninth Circuit. (*Ibid.*)

The Ninth Circuit affirmed the district court's judgment in *Soliman*, *supra*, 311 F.3d 966. The Ninth Circuit observed that the plaintiff alleged *addiction* as one of his injuries and he had constructive knowledge of that addiction long before he filed suit.[3] (*Soliman*, at pp. 972-973.) The court reasoned that the general public is "presumed by California law to know that smoking causes addiction" (*id.* at p. 974) and therefore a "longtime smoker" like the plaintiff may not claim delayed discovery of that injury (*id.* at p. 975). Because the plaintiff could be "charged with this knowledge" long before he filed suit, the Ninth Circuit in *Soliman* concluded that the action was time-barred. (*Ibid.*)

Here, relying on *Soliman*, *supra*, 311 F.3d 966, the federal district court granted defendants' motion to dismiss. The court found that "while the plaintiff in

---

[3] In *Soliman*, *supra*, 311 F.3d 966, the Ninth Circuit did not decide whether, under California law, addiction alone is an actionable injury. Instead, the court relied on the fact that the plaintiff had *alleged* addiction as an injury. The court said: "Soliman can't claim that his addiction is an appreciable injury and, at the same time, ask us to ignore it in determining when his claim accrued." (*Id.* at p. 973.)

5

the present case may not claim addiction as an injury in quite so specific a way as did the plaintiff in *Soliman*, the allegation that the plaintiff here became addicted to nicotine and was injured by that addiction runs as a thread throughout the complaint." (*Pooshs v. Altria Group, Inc.* (N.D. Cal. 2004) 331 F.Supp.2d 1089, 1095.) The district court found *Soliman* to be controlling and dismissed with prejudice plaintiff's claims against defendants.

Plaintiff appealed to the Ninth Circuit, which held the appeal in abeyance pending our decision in *Grisham*, *supra*, 40 Cal.4th 623. In *Grisham*, we considered whether the Ninth Circuit in *Soliman*, *supra*, 311 F.3d 966, had correctly construed California law. *Grisham* addressed these two questions: (1) Is there a presumption under California law that, at least since 1988, the general public has been aware of the addictive nature and health dangers of smoking (thereby barring under the statute of limitations a cause of action for addiction-based economic losses) and (2) If the cause of action for addiction-based *economic* losses is time-barred, is a claim for *physical* injuries resulting from the same tobacco use also time-barred? (*Grisham*, *supra*, 40 Cal.4th at p. 628.)

With respect to the first question, we held in *Grisham*, *supra*, 40 Cal.4th 623, that there is no special presumption that smokers are aware of the dangers of smoking. We observed, however, that there is a general, rebuttable presumption that a plaintiff has knowledge of the wrongful causes of an injury. To rebut this general presumption a plaintiff must make certain specific allegations that the plaintiff in *Grisham* had not made and, in light of her other allegations, could not plausibly make. (*Id.* at pp. 638-639.) Accordingly, in that case the plaintiff's economic injury claim was time-barred under the applicable statute of limitations. (*Id.* at p. 639.)

With respect to the second question in *Grisham*, *supra*, 40 Cal.4th 623, we expressly chose not to decide whether a claim alleging smoking-related physical

6

injury involves a different *primary right* than a claim alleging smoking-related economic injury. (*Id.* at pp. 643, 646.) Instead, we decided the case solely as a matter of statute of limitations law. We noted that economic injury and physical injury are "qualitatively different" types of injury (*id.* at p. 645; see also *id.* at p. 643), and we concluded that an appreciable injury of the first type does not commence the statutory period for suing based on a later-discovered injury of the second type (*id.* at p. 644). We did not, however, address in *Grisham* whether this same distinction would apply in a case like the one now before us, where both injuries are physical. (*Id.* at p. 643.)

While *Grisham*, *supra*, 40 Cal.4th 623, was pending before us, defendants in this case took plaintiff's deposition and learned that she had suffered from significant medical effects from smoking long before she was diagnosed with lung cancer and long before she filed her current, lung-cancer-based lawsuit. Specifically, she was diagnosed in 1989 with COPD, which is a diagnosis used to describe both emphysema and chronic bronchitis. Plaintiff also admitted knowing as early as 1989 that this pulmonary disease was caused by smoking. And later, in 1990 or 1991, she was diagnosed with periodontal disease, which her periodontist told her was caused by smoking. She did not sue defendants for either of these diseases despite knowing that they were caused by smoking.

After we decided *Grisham*, *supra*, 40 Cal.4th 623, the Ninth Circuit vacated the district court's judgment in this case and remanded the matter to that court. Defendants then moved for summary judgment, this time asserting that plaintiff's physical injuries diagnosed in 1989 (COPD) and in 1990 or 1991 (periodontal disease) commenced the statutory period for bringing her present action, which is based on the third disease (lung cancer). Having suffered significant physical injuries with knowledge that smoking was the cause of those injuries, and having failed to sue defendants within the applicable statutory periods, plaintiff could not

7

— in defendants' view — later bring suit and assert that her physical injuries turned out to be worse than previously thought. Allowing the suit under those circumstances, defendants asserted, would conflict with the well-settled rule that a statute of limitations starts to run when the plaintiff suffers "appreciable and actual harm, however uncertain in amount." (*Davies v. Krasna* (1975) 14 Cal.3d 502, 514 (*Davies*); see also *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1022 (*DeRose*).)

Plaintiff responded that her three physical injuries (COPD, periodontal disease, and lung cancer) were separate diseases, and that each was therefore the basis of a distinct primary right. Plaintiff stated "that COPD is a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer." She further argued that the primary right at issue here is not the right to be free from the wrongful exposure to tobacco smoke; rather, it is the right to be free from *lung cancer* caused by the wrongful exposure to tobacco smoke, and that this primary right is different from the right to be free from *COPD* or from *periodontal disease* caused by the wrongful exposure to tobacco smoke. The federal district court, to which the case had been remanded by the Ninth Circuit, rejected that argument.

In the view of the federal district court, plaintiff's various physical injuries were merely different ways in which she was damaged by a single alleged wrong (tobacco exposure), like suffering a broken arm and a broken leg from a single car accident. To draw distinctions among the different types of physical injury (i.e., COPD, periodontal disease, and lung cancer) that plaintiff suffered from smoking and then to allow separate suits for each injury, would — the district court said — conflict with the rule against splitting a cause of action: "The longstanding rule in California . . . is that '[a] single tort can be the foundation for but one claim for

8

damages.' " (*DeRose*, *supra*, 196 Cal.App.3d at p. 1024, fn. 5.) Accordingly, the district court granted summary judgment for defendants.

Plaintiff again appealed to the Ninth Circuit, which then asked us for clarification of California law on the application of the statute of limitations when two separate diseases arise at different times from the same alleged wrongdoing. (*Pooshs*, *supra*, 561 F.3d at pp. 966-967.) We granted the Ninth Circuit's request.

## II

A statute of limitations strikes a balance among conflicting interests. If it is unfair to bar a plaintiff from recovering on a meritorious claim, it is also unfair to require a defendant to defend against possibly false allegations concerning long-forgotten events, when important evidence may no longer be available. Thus, statutes of limitations are not mere technical defenses, allowing wrongdoers to avoid accountability. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395-397.) Rather, they mark the point where, in the judgment of the legislature, the equities tip in favor of the defendant (who may be innocent of wrongdoing) and against the plaintiff (who failed to take prompt action): "[T]he period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." (*Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 463-464.)

Critical to applying a statute of limitations is determining the point when the limitations period begins to run. Generally, a plaintiff must file suit within a designated period after the cause of action *accrues*. (Code Civ. Proc., § 312.) A cause of action accrues "when [it] is complete with all of its elements" — those elements being wrongdoing, harm, and causation. (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 397.)

9

Application of the accrual rule becomes rather complex when, as here, a plaintiff is aware of both an injury and its wrongful cause but is uncertain as to how serious the resulting damages will be or whether additional injuries will later become manifest. Must the plaintiff sue even if doing so will require the jury to speculate regarding prospective damages? Or can the plaintiff delay suit until a more accurate assessment of damages becomes possible? Generally, we have answered those questions in favor of prompt litigation, even when the extent of damages remains speculative. Thus, we have held that "the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period." (*Davies*, *supra*, 14 Cal.3d at p. 514.)

The most important exception to that general rule regarding accrual of a cause of action is the "discovery rule," under which accrual is postponed until the plaintiff "discovers, or has reason to discover, the cause of action." (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 397.) Discovery of the cause of action occurs when the plaintiff "has reason . . . to suspect a factual basis" for the action. (*Id.* at p. 398; see also *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111.) "The policy reason behind the discovery rule is to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause." (*Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531.)

### III

Defendants' core argument is that plaintiff's 1989-diagnosed COPD, either alone or in combination with the 1990- or 1991-diagnosed periodontal disease, constituted "appreciable and actual harm" (*Davies*, *supra*, 14 Cal.3d at p. 514), triggering the running of the pertinent statute of limitations on her indivisible cause of action for smoking-related injury. In 2003, plaintiff was diagnosed with lung cancer, which led her to sue defendants. As of 1991, defendants assert,

10

plaintiff had suffered actual harm, her damages were not merely nominal,[4] and she knew that the harm she had suffered was from smoking. Therefore, in defendants' view, plaintiff should have brought her lawsuit at that time. That she might eventually develop lung cancer in 2003 was, according to defendants, merely an uncertainty as to the *amount* of harm, which did not delay the running of the statute of limitations. In short, defendants' view is that plaintiff could have sued in 1991 but failed to do so. Because defendants' argument depends heavily on the "appreciable and actual harm" rule we announced in *Davies*, *supra*, 14 Cal.3d at page 514, and then clarified in *Grisham*, *supra*, 40 Cal.4th at page 644, we discuss those cases in detail below.

Unlike this case, *Davies*, *supra*, 14 Cal.3d 502, was not a personal injury case. Rather, *Davies* involved a cause of action for "breach of confidence" — that is, the breach of an obligation, imposed by law, to maintain the confidentiality of a story idea.[5] In 1951, the plaintiff, Valentine Davies, submitted a written story in confidence to the defendant, Norman Krasna, who later incorporated the idea into a successful Broadway play. (*Davies*, at pp. 504-505, 511.) Davies knew as early as 1955 that Krasna had breached his obligation to maintain the confidentiality of the story (*id.* at p. 512), and Davies suffered actual harm at that time (because the breach " 'substantially destroyed the marketability of [the] story' " (*id.* at p. 514)). Nevertheless, Davies did not sue Krasna until 1958, when Krasna began profiting

---

**4**    According to the United States Department of Health & Human Services, COPD is the fourth leading cause of death in the United States. (See Centers for Disease Control and Prevention, Nat. Center for Health Statistics, Leading Causes of Death <http://www.cdc.gov/nchs/fastats/lcod.htm> [as of May 5, 2011].)

**5**    This court's decision in *Davies*, *supra*, 14 Cal.3d 502, did not actually recognize the validity of this "breach of confidence" cause of action; instead, we assumed (based on the law of the case) that the plaintiff had stated a valid cause of action, and we proceeded to address the statute of limitations issue. (*Id.* at p. 508.)

11

financially from the story. We held that the applicable two-year statute of limitations began to run in 1955 when Davies first learned of the breach and suffered "appreciable and actual harm." In that context, we said: "[N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." (*Ibid.*)

Significantly, in *Davies*, *supra*, 14 Cal.3d 502, we were considering only a single *type* of injury (economic injury based on the misappropriation of intellectual property), and the issue was whether uncertainty as to the extent of the damages associated with *that single injury* delayed the running of the statute of limitations. Thus, we did not consider in *Davies* whether "the infliction of appreciable and actual harm" of one type (for example, economic injury) would "commence the statutory period" with respect to harm of a *completely different type* (for example, physical injury). (*Id.* at p. 514.) Nor did we consider whether "the infliction of appreciable and actual harm" in the form of a specific disease (such as COPD here) would "commence the statutory period" with respect to a *separate and distinct disease* (as the lung cancer here is alleged to be). (*Ibid.*) Therefore, *Davies* does not govern this case. We have never stated what commences the running of the statutory period in a case like this one, in which a later-discovered physical injury is alleged to be separate from an earlier-discovered physical injury. Our decision in *Grisham*, *supra*, 40 Cal.4th 623, emphasized the limits of our holding in *Davies*, *supra*, 14 Cal.3d 502.

As relevant here, the plaintiff in *Grisham*, *supra*, 40 Cal.4th 623, sued cigarette manufacturers for smoking-related injuries. She contended that the cigarette manufacturers had wrongfully induced her addiction to tobacco, and she alleged claims for economic injury (the cost of purchasing cigarettes) and personal injury (emphysema and periodontal disease). (*Id.* at pp. 629-631.) We concluded in *Grisham* that the *economic injury* claim was barred by the applicable statute of

12

limitations because the plaintiff knew or should have known about her injury long before she filed suit. (*Id.* at pp. 638-639.) That conclusion raised the question whether the *personal injury* claims were also barred, on the theory that the plaintiff had suffered only one indivisible harm and that the physical injuries were simply another category of damages related to that single harm. In addressing this question in *Grisham*, we did not decide whether the two injuries (economic and physical) implicated two separate primary rights. (*Id.* at pp. 643, 646.) Instead, we focused exclusively on the statute of limitations, and we held that appreciable harm in the form of an *economic injury* does not begin the running of the statute of limitations on a suit to recover damages for a *physical injury*. (*Id.* at pp. 643-646.) *Grisham* interpreted the "appreciable and actual harm" rule of *Davies*, *supra*, 14 Cal.3d at page 514, to be limited to cases involving a single type of injury, and we found no case applying that rule to a later-discovered injury of a different type. (*Grisham*, at p. 644.)**6**

---

**6**     As mentioned, the court in *Grisham*, *supra*, 40 Cal.4th 623, concluded the plaintiff's later manifesting claim for physical injury was timely without also determining whether that claim involved the same primary right as the plaintiff's earlier manifesting claim for economic damage. In so doing, we necessarily, albeit implicitly, assumed that, even if the plaintiff's various claims involved only a single primary right (as the defendants there asserted), we could still apply the statute of limitations separately to the plaintiff's physical injury claim. (*Id.* at pp. 643, 646.) In other words, we necessarily accepted the possibility that a plaintiff can have a single cause of action that accrues (for statute of limitations purposes) at different times with respect to different types of harm, thus permitting some damage claims to proceed although others are time-barred.

To that extent, *Grisham*, *supra*, 40 Cal.4th 623, logically supports the recognition of an exception to the rule that "a single tort can be the foundation of but one claim for damages." (*Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622; *DeRose*, *supra*, 196 Cal.App.3d 1011, 1024.) Because the exception is inferred from *Grisham*'s holding, it is necessarily limited to cases presenting the same legal and factual situation, that is, a statute of limitations defense to a claim alleging a latent disease that is separate and distinct

*(footnote continued on next page)*

In *Grisham*, *supra*, 40 Cal.4th 623, we also emphasized the impractical consequences of a contrary conclusion, relying on *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 (*Fox*). There, the plaintiff underwent gastric bypass surgery. She later sued the surgeon and the hospital for medical malpractice. During discovery, she learned that her alleged injury might have been caused by a defective stapler manufactured by a nonparty. The plaintiff then amended her complaint to add as a defendant the stapler manufacturer, which asserted the statute of limitations as a defense. (*Id.* at pp. 803-805.) We concluded in *Fox* that knowledge of the facts supporting a medical malpractice cause of action against one defendant does not necessarily commence the running of the statute of limitations with respect to a separate products liability cause of action against a *different* defendant. (*Id.* at pp. 813-815.)

*Grisham*, *supra*, 40 Cal.4th 623, involved a claim against the *same* defendants alleging *different* injuries, whereas *Fox*, *supra*, 35 Cal.4th 797, involved a claim against *different* defendants alleging the *same* injury. Nevertheless, we held that the policy underlying our holding in *Fox* was equally applicable in *Grisham*. In *Grisham*, we quoted the following language from *Fox*: " '[I]t would be contrary to public policy to require plaintiffs to file a lawsuit "at a time when the evidence available to them failed to indicate a cause of action."

_____

*(footnote continued from previous page)*

from, and becomes manifest long after, the initial effects of the plaintiff's injury. (*Grisham*, *supra*, 40 Cal.4th at p. 644.) Of course, the need for such an exception in any particular case depends on how the relevant primary rights are defined. If two primary rights (and hence two causes of action) are alleged, those two causes of action can accrue independently for purposes of applying the statute of limitations without the need for an exception to the rule that a single tort supports only a single claim. (See Code Civ. Proc., § 312.)

14

[Citations.] Were plaintiffs required to file all causes of action when one cause of action accrued, . . . they would run the risk of sanctions for filing a cause of action without any factual support. [Citations.] Indeed, it would be difficult to describe a cause of action filed by a plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as anything but frivolous. At best, the plaintiff's cause of action would be subject to demurrer for failure to specify supporting facts [citation].' " (*Grisham*, *supra*, 40 Cal.4th at pp. 644-645, quoting *Fox*, *supra*, 35 Cal.4th at p. 815.)

Applying that language from *Fox*, *supra*, 35 Cal.4th at page 815, to the facts in *Grisham*, *supra,* 40 Cal.4th 623, we rejected a rule that "would compel cigarette smokers either to file groundless tort causes of action based on physical injury against tobacco companies as soon as they discovered they were addicted to cigarettes and had an unfair competition cause of action . . . , or risk losing their right to sue in tort for such physical injury." (*Id.* at p. 645.) Such a requirement, *Grisham* said, "would violate the essence of the discovery rule that a plaintiff need not file a cause of action before he or she ' "has reason at least to suspect a factual basis for its elements." [Citations.]' [Citation.]" (*Ibid.*) Furthermore, "[i]t would directly contravene 'the interest of the courts and of litigants against the filing of potentially meritless claims.' [Citation.]" (*Ibid.*)

In *Grisham*, *supra*, 40 Cal.4th 623, we expressly stopped short of deciding the issue presented here, in which a single wrong gives rise to two injuries of the same general type (physical injuries), but the two injuries become manifest at different times and are alleged to be separate and distinct. (*Id.* at p. 646.) Nevertheless, we see no reason not to apply to this case the logic of *Grisham*. In both cases, the injuries arose at different times and were separate from one another. In *Grisham*, the injuries were separate from one another in that one was

15

economic and the other was physical; here, the Ninth Circuit has asked us to assume that the injuries are three separate diseases.  (See pp. 3-4, *ante*.)

It is critical to consider the posture in which this matter comes to us.  To defeat summary judgment in the federal district court, plaintiff needed to identify an issue of fact that, if decided in her favor, would allow her to overcome defendants' statute of limitations defense.  (See generally *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248; *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322.)  The issue of fact that plaintiff identified in the federal district court was that her lung cancer is a disease that is separate from her earlier-discovered COPD and periodontal disease.  For example, plaintiff stated "that COPD is a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer."  It is not our role to decide or even question the factual validity of that assertion.  Rather, our role is to determine, as a legal matter, whether plaintiff's assertion has any relevance under California law for purposes of applying the statute of limitations, for *that* is the question that the Ninth Circuit asked us to decide.  In other words, the Ninth Circuit has asked us to assume plaintiff's assertion to be true and to decide, as a matter of California law, whether two physical injuries that constitute separate diseases and that become manifest at different times can be considered "qualitatively different" (*Grisham*, *supra*, 40 Cal.4th at p. 645) for purposes of applying the statute of limitations.  The answer is "yes."

As already discussed (see pp. 14-15, *ante*), we emphasized in *Grisham* that it made little sense to require a plaintiff whose only known injury is economic to sue for personal injury damages based on the speculative possibility that a then latent physical injury might later become apparent.  (*Grisham*, *supra*, 40 Cal.4th at pp. 644-645.)  Likewise, here, no good reason appears to require plaintiff, who years ago suffered a smoking-related disease that is *not* lung cancer, to sue *at that*

16

*time* for lung cancer damages based on the speculative possibility that lung cancer might later arise. Nothing we said in *Davies*, *supra*, 14 Cal.3d 502, requires such a rule, and defendants here have cited no case that supports such a rule. Moreover, although we reaffirm the application of the "appreciable and actual harm" rule (*id.* at p. 514) to cases that do not involve latent diseases, application of that rule to bar plaintiff's lung cancer claim before her lung cancer had become manifest would violate the policy underlying the discovery rule, which, as we noted earlier, is to prevent "the limitations period . . . [from] expir[ing] before a plaintiff has or should have learned of the latent injury and its cause." (*Buttram v. Owens-Corning Fiberglas Corp.*, *supra*, 16 Cal.4th at p. 531.)

It is true that here plaintiff's COPD involved the same part of the body (the lungs) as her lung cancer. Nevertheless, as we noted earlier, the Ninth Circuit has asked that in deciding the statute of limitations issue we accept as true plaintiff's factual assertion "that COPD is a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer." (See p. 16, *ante*.) Assuming that assertion to be true, it does not matter that both diseases affect the lungs. The significant point is that the later-occurring disease (lung cancer) is, according to plaintiff's offer of proof, a disease that is separate and distinct from the earlier-occurring disease (COPD). Therefore, under the logic of our decision in *Grisham*, *supra*, 40 Cal.4th 623, the statute of limitations bar can apply to one disease without applying to the other.

17

## IV

In response to the Ninth Circuit's inquiry, we conclude that when a later-discovered latent disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based on the later disease.


                                                    KENNARD, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
SUZUKAWA, J.*

---

\*       Associate Justice, Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Pooshs v. Philip Morris USA, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on certification pursuant to rule 8.548, Cal, Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S172023
**Date Filed:** May 5, 2011

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Brayton ♦ Purcell, Alan R. Brayton, Gilbert L. Purcell and Lloyd F. LeRoy for Plaintiff and Appellant.

Law Office of Holly L. Hostrop and Holly L. Hostrop for Tobacco Trial Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Jones Day, Peter N. Larson, Stephen J. Kaczynski and Ashlie E. Case for Defendants and Respondents R.J. Reynolds Tobacco Co. and Brown & Williamson Holdings, Inc.

Munger, Tolles & Olson, Daniel P. Collins and David S. Han for Defendant and Respondent Philip Morris USA Inc.

Shook, Hardy & Bacon and Kevin Underhill for Defendant and Respondent Lorillard Tobacco Co.

Krieg, Keller, Sloan, Reilley & Roman, Stan G. Roman and Tracy M. Clements for Defendant and Respondent Hill & Knowlton, Inc.

Daniel J. Popeo, Richard A. Samp; Bergeson and Mark E. Foster for Washington Legal Foundation as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Gilbert L. Purcell
Brayton ♦ Purcell
222 Rush Landing Road
Novato, CA  94948
(415) 898-1555

Daniel P. Collins
Munger, Tolles & Olson
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
(213) 683-9100